IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD POOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-181-WKW |
| | ) | [WO] |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the court is Defendant McKesson Corporation's Motion to Dismiss (Doc. # 12), which Defendant Life Insurance Company of North America has joined (Doc. # 18). Plaintiff has responded to the original motion and the joinder (Docs. # 20, 25, respectively), and each Defendant has replied (Docs. # 23, 27, respectively). After considering Mr. Poole's complaint, the parties' briefs, and the relevant law, the court concludes that Defendants' motions are due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over Mr. Poole's ERISA claims pursuant to 28 U.S.C. § 1331. This case involves federal questions arising

under ERISA, over which the court has original jurisdiction pursuant to 29 U.S.C. § 1132(e). The parties do not contest personal jurisdiction or venue.

## II. STANDARDS OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper "when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (internal citation omitted).[1]

---

[1] For reasons explained in Section IV.A. of this opinion, the court construes LINA's joinder motion to dismiss as a motion for judgment on the pleadings.

## III.  BACKGROUND

### A.  Factual allegations

Plaintiff Richard Poole alleges the following facts in his complaint against Defendants Life Insurance Company of North America ("LINA") and McKesson Corporation.  (Doc. # 1.)  McKesson formerly employed Mr. Poole and offered him the option to participate in its Group Long Term Disability Plan (the "Plan"). McKesson is the Plan Administrator.  Mr. Poole participated in the Plan, which provides for monthly disability benefit payments in the event that participating employees become disabled in the course of their employment.

In May 2009, Mr. Poole was in an auto accident while working for McKesson.  The accident rendered him a quadriplegic, and he is unable to work. Mr. Poole applied for and began receiving long term disability benefits under the Plan.  He also sued Ford Motor Company, and received a settlement, the terms of which are confidential.  The complaint does not state the date of the settlement, but it was apparently entered before April 13, 2011.  (Doc. # 1, at 6 ¶ 19.)

From February 2011 to April 2011, Mr. Poole and his attorney and McKesson's attorney communicated orally and in writing concerning the potential effects that Mr. Poole's settlement might have on his participation in the Plan.[2] During the discussions, Mr. Poole submitted a written request to McKesson for a

---

[2] In its motion to dismiss, McKesson identifies the attorney as Shawn Cole, Esq.

copy of the insurance policy governing his long term disability claim offered through Cigna Group Insurance.[3]

Mr. Poole claims that McKesson responded to his request by providing a "Long Term Disability Summary Plan Description" effective January 2004 (the "2004 SPD"), which McKesson represented was "in effect" for his claim.  Mr. Poole sought further confirmation from McKesson that the 2004 SPD applied to his claim.  (Doc. # 1, at 4 ¶ 13.)  Mr. Poole then relied upon the provisions of the 2004 SPD when negotiating the terms of his settlement with Ford.  Mr. Poole alleges that McKesson failed to provide a copy of the governing Plan documents – a Policy and Group Disability Insurance Certificate, both effective January 1, 2006 (collectively the "2006 Policy") and a Long Term Disability Summary Plan Description effective January 1, 2010 (the "2010 SPD") – or to even make him aware that the documents existed.  McKesson did not provide Mr. Poole with the 2006 Policy or 2010 SPD until September 22, 2011, long after his reliance on the 2004 SPD when negotiating his settlement with Ford.

On April 13, 2011, Praxis Disability Consulting, an agent of Cigna, contacted Mr. Poole indicating that, pursuant to the governing Plan documents, it would impose a constructive trust or equitable lien on any monies paid to Mr. Poole as a result of his settlement with Ford.  Cigna's asserted rights to Mr. Poole's

---

[3] Cigna is a trade name or affiliate company of LINA.  (Doc. # 1, at 4.)  LINA denies this allegation.  (Doc. # 13, at 4 n.1.)

settlement proceeds surprised Mr. Poole, who claims that he lacked knowledge of the existence of and provisions within the 2006 Policy and 2010 SPD entitling Cigna to his settlement proceeds.[4]

In addition to McKesson's alleged failure to furnish Mr. Poole with the 2006 Policy or the 2010 SPD in February 2011, Mr. Poole claims that, at various times from August 2011 through May 2012, he requested from both Defendants copies of various documents including the summary plan description documents governing his claim, his claim file, Cigna's claim manual, Cigna's Book of Knowledge.  Mr. Poole says that Defendants have failed to furnish most of the requested information.

On October 13, 2011, Mr. Poole appealed Cigna's decision to assert a subrogation interest or equitable lien on his settlement proceeds.  He furnished a copy of the appeal to McKesson.  McKesson responded by letter in November

---

[4] The 2004 SPD, which Mr. Poole consulted when negotiating with Ford, does not include as "other income" any amounts recovered from product liability litigation or settlement; neither does it contain subrogation language concerning applicability of the "make-whole" doctrine which Mr. Poole claims would preserve Cigna's right to subrogation.  On the other hand, the 2006 Policy does provide that Cigna has the right to subrogation or reimbursement for "any amounts paid because of loss of earnings or earning capacity through settlement . . . where a third party may be liable, regardless of whether liability is determined."  (Doc. # 1, at 6–7 ¶ 21.)  But like the 2004 SPD, the 2006 Policy does not discuss applicability of the make-whole doctrine.  The 2010 SPD has language that both covers as "other income" any settlement proceeds and discusses the make-whole doctrine.

The make-whole doctrine is "[t]he principle that, unless [an] insurance policy provides otherwise, an insurer will not receive any of the proceeds from the settlement of a claim, except to the extent that the settlement funds exceed the amount necessary to fully compensate the insured for the loss suffered."  Black's Law Dictionary (9th ed. 2009).

expressing its disagreement with Mr. Poole's allegations in his appeal. McKesson's letter did not identify any further administrative remedies that Mr. Poole should exhaust.

In December 2011, Cigna indicated again that it would claim an offset against Mr. Poole's long term disability benefit, per the 2006 Policy, and it demanded production of the settlement agreement with Ford. Cigna further stated that it would reduce Mr. Poole's monthly insurance benefit to $50 per month in January 2012. In a response letter to Cigna dated December 16, 2012, Mr. Poole disputed the benefit reduction on the grounds that (1) the 2006 Policy did not specifically exclude the make-whole doctrine, (2) McKesson had provided him with an outdated Plan document, and (3) he had relied on the outdated Plan document when negotiating his settlement with Ford. He also pointed out that Cigna had not decided his appeal within the time period prescribed by ERISA. Cigna responded with two more letters explaining that it would reduce Mr. Poole's benefits to $50 per month in March 2012.

After Cigna reduced the benefit payments, Mr. Poole appealed a second time, citing the same evidence submitted in his prior appeal. In a May 31, 2012 letter, Cigna again denied Mr. Poole's second appeal on the basis of the terms of the 2006 Policy. Mr. Poole asserts that all of Cigna's decisions that have been

adverse to him have been based upon language in the 2006 Policy and not the 2004 or 2010 SPDs.

As a consequence of Cigna and McKesson's wrongful actions, Mr. Poole claims that he has suffered significant hardship.  He alleges that he has exhausted all available administrative remedies, or alternatively, that it would be futile to pursue additional administrative remedies.

## B.   **Procedural History**

On the basis of these facts, Mr. Poole brings this action in which he asserts three claims arising under ERISA.  In Count I of the complaint, he seeks recovery against LINA for "long term disability benefits, damages, and attorney's fees." (Doc. # 1, at 10.)  In Count II, he seeks equitable relief[5] and attorney's fees for McKesson and LINA's breaches of their fiduciary duties.  And in Count III, Mr. Poole seeks statutory damage penalties and attorney's fees against McKesson and LINA for their individual failures to timely furnish him, per his requests, with copies of various Plan documents and other information supporting his claims.

McKesson has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  It argues that Count I is due to be dismissed because Mr. Poole "failed to timely perfect his appeal of benefits denial or sufficiently plead his

---

[5] Count II demands an award of restitution against McKesson and an injunction and reformation of the 2006 Policy against LINA.

benefits claim." (Doc. # 12, at 1.)[6] McKesson urges that Count II is due to be dismissed because a breach of fiduciary duty claim under ERISA is invalid where, as here, the plaintiff has an ERISA remedy for denied benefits (*i.e.*, Count I). It further argues that Count II fails to satisfy Federal Rule of Civil Procedure 8. Lastly, McKesson contends that Count III is due to be dismissed because Mr. Poole sought documents improperly by directing his request to McKesson's lawyer representing McKesson in his workers compensation subrogation case and not in that lawyer's capacity as representative of McKesson's administration of an ERISA plan. Additionally, McKesson argues that Mr. Poole is not entitled to statutory penalties for McKesson's failure to provide numerous documents that ERISA does not require plan administrators to furnish.

LINA answered the complaint the same day that McKesson filed its motion to dismiss, and LINA's original answer did not assert as a defense that Mr. Poole failed to state claims upon which relief could be granted. (*See* Doc. # 13.) But seventeen days after McKesson filed its motion to dismiss and LINA filed its original answer, LINA amended its answer to include Rule 12(b)(6) defenses on Counts II and III. (Doc. # 19.) It contemporaneously filed a joinder motion adopting and incorporating by reference McKesson's arguments and asserting

---

[6] LINA does not join this portion of McKesson's argument and admits that the complaint "substantively alleges claims for additional LTD benefits under [ERISA] in Count I." (Doc. # 18, at 2.)

some of its own positions.   LINA's motion is most notably different from McKesson's in that LINA attacks only Counts II and III.  (Doc. # 18.)

## IV.  DISCUSSION

### A.    <u>Timeliness of LINA's Joinder Motion</u>

First, it must be decided whether LINA's joinder motion to dismiss is properly before the court because Mr. Poole criticizes LINA's motion to dismiss as being untimely.  The defense that a complaint "fail[s] to state a claim upon which relief can be granted," like "every defense," "must be asserted in the [answer] if [an answer] is required."  Fed. R. Civ. P. 12(b).  However, "[a] *motion* asserting any [Rule 12(b)] defenses *must* be made *before* pleading [an answer] if a responsive pleading is allowed."  *Id.* (emphases added).  Mr. Poole contends that "if LINA intended to file a motion to dismiss, it should have done so before filing its [answer]."  (Doc. # 25, at 2 (citing various Eleventh Circuit cases).)

LINA replies that pursuant to Federal Rule of Civil Procedure 15(a)(1), it had the right to amend its answer within 21 days of filing its original answer, and it therefore properly raised the 12(b)(6) defense in its amended answer.  It further argues that while Rule 12(b)(2)–(5) defenses can be waived, *see* Fed. R. Civ. P.

12(h)(1), the 12(b)(6) defense may be raised "throughout the course of litigation, even at trial." (Doc. # 27, at 3 (citing Fed. R. Civ. P. 12(h)(2)).)[7]

While LINA is correct that it had the right to timely amend its answer to assert any 12(b)(6) defenses, and that by raising the defenses in the amended answer, it effectively preserved those defenses, LINA ignores Rule 12's requirement that "[a] motion asserting any of the[ 12(b)] defenses must be made before pleading." Fed. R. Civ. P. 12(b). *See also Leonard v. Enter. Rent a Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002) ("After answering the complaint, the defendants filed Rule 12(b)(6) motions to dismiss the plaintiffs' claims. Under Rule 12(b), these motions were a nullity; by filing an answer, the defendants had eschewed the option of asserting *by motion* that the complaint failed to state a claim for relief." (emphasis added)). Therefore, while LINA preserved its right to assert as a defense that Counts II and III fail to state a claim upon which relief can be granted, it forsook the right to assert the defenses in a motion to dismiss. *See United States v. Ala. Dep't of Mental Health, & Mental Retardation*, No. 2:08-cv-1025-MEF, 2010 WL 447399, at *4 (M.D. Ala. Feb. 9, 2010) (Fuller, J.).

However, in the interest of judicial economy, the court will treat LINA's untimely motion to dismiss as a Rule 12(c) motion for judgment on the pleadings.

---

[7] Rule 12(h)(2) allows a defendant to assert the 12(b)(6) defense "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."

*See Keller v. Strauss*, 480 F. App'x 552, 554 n.2 (11th Cir. 2012) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002)); Fed. R. Civ. P. 12(h)(2).

**B.   Merits of Defendants' Motions**

**1.   *Count I – Claim for Benefits***

McKesson emphasizes that the 2004 and 2010 SPDs each provided Mr. Poole with 180 days to appeal a denial of benefits.  Mr. Poole's complaint alleges that he received notice from Cigna of his denied claim on April 13.  Then, he filed his appeal on October 13, 2011, 183 days later.[8]  Hence, McKesson argues that dismissal of Count I is proper because Mr. Poole failed to exhaust administrative remedies.  (Doc. # 12, at 3.)  McKesson also contends that Count I fails to plead facts in support of his allegation that his third-party settlement with Ford did not make him whole.  (Doc. # 12, at 4–5.)  Specifically, McKesson criticizes Mr. Poole's failure to plead the amount he received from Ford for settlement. McKesson continues to develop these arguments in its reply brief.

Mr. Poole responds with several arguments, but he most fundamentally objects that Count I does not implicate McKesson, and therefore McKesson's argument is "moot to the extent [McKesson] seeks to dismiss itself from Count I." (Doc. # 20, at 2.)  Indeed, Count I is against LINA, not McKesson.  Moreover, while LINA denies liability, "LINA admits that [Mr. Poole]'s Complaint

_____

[8] Mr. Poole argues that it was actually just 181 days.  (Doc. # 20, at 3.)  Either way, he was late, if his October 13, 2011 response counts as a relevant "appeal."

substantively alleges claims for additional LTD benefits under § 1132(a)(1)(B) . . .

in Count I." (Doc. # 18, at 2.) Therefore, McKesson's motion to dismiss Count I

will be denied as moot.

### 2.    *Count II – Claims for Breach of Fiduciary Duty*

Next, McKesson argues that Mr. Poole may not seek equitable relief under

§ 1132(a)(3) because he has an adequate legal remedy under § 1132(a)(1)(B).[9]

(Doc. # 12, at 5–6.) McKesson asserts that this rule governs even if Mr. Poole is

unsuccessful on his § 1132(a)(1)(B) claim for benefits. *See Ogden v. Blue Bell*

*Creameries U.S.A., Inc.*, 348 F.3d 1284, 1286–88 (11th Cir. 2003) (citing *Varity*

*Corp. v. Howe*, 516 U.S. 489, 515 (1996)); *Katz v. Comprehensive Plan of Grp.*

*Ins.*, 197 F.3d 1084, 1088–89 (11th Cir. 1999) (same).[10] Additionally, McKesson

repeats the challenge it lodges against Count I that Mr. Poole failed to plead

adequate facts showing the Ford settlement did not make him whole.

---

[9] Section 502 of ERISA is codified at 29 U.S.C. § 1132. Section 502(a)(1)(B) is 29 U.S.C. § 1132(a)(1)(B); Section 502(a)(3) is 29 U.S.C. § 1132(a)(3). The court will use "§ 502" and "§ 1132" interchangeably because the parties and the cases they cite vary in the usage of "§ 502" and "§ 1132."

[10] In *Varity*, the Supreme Court decided that § 502(a)(3), the remedial provision of ERISA for equitable relief, empowered a beneficiary to bring a cause of action for breach of fiduciary duty. The Court remarked in dicta that "where Congress elsewhere provide[s] adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515. In *Katz* and *Ogden*, the Eleventh Circuit interpreted *Varity*'s dicta to mean that § 502(a)(3) is merely a "catchall provision" that provides relief only for injuries not otherwise adequately provided for by ERISA. *Katz*, 197 F.3d at 1088; *Ogden*, 348 F.3d at 1287.

LINA adopts McKesson's arguments, cites the same authorities, and argues that "LINA's alleged wrongdoing" in Count II "is the same wrongdoing alleged in Count I." (Doc. # 18, at 2.) LINA further argues, in the reply brief, that the breach of fiduciary duty claim is really against McKesson, not LINA. (Doc. # 27, at 3–4.)

Mr. Poole responds that McKesson has neglected to cite another Eleventh Circuit case examining a complaint like his in light of *Varity* and *Katz*. In *Jones v. American General Life and Accident Insurance Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004), the court considered "[w]hether the district court erred in dismissing the [plaintiffs'] Section 502(a)(3) breach of fiduciary duty claim under Rule 12(b)(6), finding that Section 502(a)(1)(B) afforded [plaintiffs] with an adequate remedy." The Eleventh Circuit held that the district court erroneously dismissed the plaintiffs' Section 502(a)(3) claim and advised that "the district court should have considered whether the allegations supporting the Section 502(a)(3) claim were also sufficient to state a cause of action under Section 502(a)(1)(B)." *Id.* at 1073. According to *Jones*, a district court should dismiss a § 502(a)(3) claim when the allegations supporting the § 502(a)(3) claim could also support a § 502(a)(1)(B) claim, regardless of the relief sought. *Id.*; *see also Tebbetts v. Blue Cross Blue Shield of Ala.*, No. 2:07-cv-925-MEF, 2009 WL 1850537, at *4 (M.D. Ala. June 26, 2009) (Fuller, J.).

Mr. Poole likens his case to *Jones* and claims that he has pleaded "two factually distinct claims." (Doc. # 20, at 9 ("[Mr. Poole's (a)(1)(B)] benefits claim is based solely on LINA's actions of reducing his monthly benefit due to language contained in the Plan, and [he] claims that this violates the make-whole doctrine. However, . . . [his (a)(3)] breach of fiduciary duty claim is based solely on McKesson's actions of providing inaccurate and/or incorrect Plan documents to [him], when he would have structured his third-party settlement differently had he been given the correct Plan document.").) Mr. Poole "intended to plead Count II in the alternative to Count I," (Doc. # 20, at 10), and is willing to concede that "he has no legal entitlement to benefits [under (a)(1)(B)] for purposes of his [(a)(3)] breach of fiduciary duty claim," (Doc. # 20, at 11 n.8). If the court finds his complaint to be deficient in pleading Count II as an alternative claim for relief should his Count I claim fail, Mr. Poole requests that he be permitted to amend his complaint to plead Count II as an alternative to Count I. (Doc. # 20, at 10 n.6.)

Similarly, Mr. Poole disagrees with LINA's position that Count II against LINA is a repackaging of his claims against LINA in Count I. (Doc. # 25, at 4 ("While the harm to [Mr. Poole] is admittedly the same in Counts I and II (*i.e.* reduction in his disability income to $50 a month, causing financial distress), the wrongful conduct involved is not [the same], nor are the potential remedies.").) Mr. Poole cites several Supreme Court cases that have held that ERISA plaintiffs

may seek the same equitable remedies that he seeks in a § 502(a)(3) claim (*i.e.*, reformation, restitution, and injunction), so long as the equitable relief claims are not "duplicative and based on the same allegations" as the § 502(a)(1)(B) claim for benefits.  (Doc. # 25, at 5–6.)

### a.    Whether Count II Is a Re-characterization of Count I

According to *Jones*, the relevant question is whether the allegations supporting Mr. Poole's § 1132(a)(3) breach of fiduciary duty claim would also support a cause of action under § 1132(a)(1)(B).  *See Jones*, 370 F.3d at 1073 (citing *Varity*, 516 U.S. at 512, 515).[11]   The factual predicate for Mr. Poole's

---

[11] Count I of the complaint "seeks to recover long term disability benefits, damages, and attorney's fees" from LINA for Cigna's wrongful reduction of Mr. Poole's long term disability claim to $50 per month.  (Doc. # 1, at 10–11.)  It then demands judgment against LINA as follows:

   a. For the sum of all past due long term disability benefits in an amount which does not take into account Mr. Poole's third-party settlement;

   b. For reinstatement of Mr. Poole's claim to all present and future disability benefits in an amount which does not take into account his third-party settlement;

   C. For an award of attorney's fees;

   d. For interest on all past due benefits; and

   e. For such other further or different relief as may be just and proper under 29 § U.S.C. 1132(a)(1)(B).

(Doc. # 1, at 11.)

   Count II of the complaint discusses McKesson's fiduciary duty as Plan Administrator to provide Mr. Poole with correct Plan documents upon his request, its failure to provide the relevant documents, Mr. Poole's detrimental reliance upon the incorrect documents, and the prejudice that Mr. Poole has suffered (*i.e.*, Cigna's reduction of his monthly benefit payment to $50 per month and its claim on his settlement proceeds).  (*See* Doc. # 1, at 12–13.)  Count II also

§ 1132(a)(3) claim against McKesson is that McKesson breached its fiduciary duties as Plan Administrator by failing to furnish the relevant Plan documents that Mr. Poole needed to make an informed decision to settle with Ford.  Contrary to McKesson's argument, these allegations would not support a cause of action under 29 U.S.C. § 1132(a)(1)(B) for "benefits due to [Mr. Poole] under the terms of his [P]lan," "enforce[ment of] his rights under the terms of the [P]lan," or "clarif[ication of] his rights to future benefits."

It is also significant that Mr. Poole concedes that he is not entitled to recovery under both Counts I and II.  *See Jones*, 370 F.3d at 1071 (noting that the plaintiffs "plead in the alternative and assume that they cannot recover under

_____

alleges that Cigna breached its duty by failing to provide Mr. Poole with a copy of either the 2006 Policy or the 2010 SPD prior to his negotiation of his settlement, even though he presented a written request for the documents.  (Doc. # 1, at 12 ¶ 47.)  Count II then demands judgment against McKesson and LINA under 29 U.S.C. § 1132 (a)(3) as follows:

    a. For equitable relief requiring McKesson to make restitution or otherwise make Mr. Poole whole for the wrongful conduct which has been prejudicial to his long term disability claim;

    b. For an injunction preventing LINA from reducing Mr. Poole's monthly disability benefit by his third-party settlement;

    c. For reformation of the 2006 Policy to prevent LINA from reducing Mr. Poole's monthly disability benefit by his third-party settlement, in accordance with the terms of the 2004 SPD upon which he relied;

    d. For an award of attorney's fees; and

    e. For such other equitable relief as may be just and proper under 29 U.S.C. § 1132(a)(3).

(Doc. # 1, at 13–14.)  The Complaint does not expressly plead Count II as an alternative claim to Count I, but Mr. Poole says that was his intent.  (Doc. # 20, at 9–10.)

Section 502(a)(1)(B)"); *id.* at 1074 (reasoning that "[the plaintiffs] concede for purposes of [the (a)(3)] claim that they are not entitled to [benefits] under the terms of their plan"). Mr. Poole affirms that Count II is an alternative to Count I, (Doc. # 20, at 10–11), and because *Varity* and other case law requires this result notwithstanding Mr. Poole's admission, the court will not require him to amend his complaint to expressly plead Count II as an alternative to Count I. Assuming that no benefits are due to Mr. Poole from LINA and that Count I fails, Mr. Poole would be left without a remedy under ERISA if the court now dismissed Count II against McKesson. The Eleventh Circuit has rejected such a result. *See Jones*, 370 F.3d at 1073–74. Therefore, McKesson's motion to dismiss Count II is due to be denied.[12]

As for LINA, Mr. Poole alleges that LINA owed him a fiduciary duty as the Claims Administrator (Doc. # 1, at 2 ¶ 7), and that LINA (actually, Cigna) did not "provide him with a copy of the 2006 Policy, or the 2010 SPD" prior to his settlement with Ford, (Doc. # 1, at 12 ¶ 47).[13] These are the allegations supporting Mr. Poole's claim to equitable relief (injunction and reformation) against LINA for breach of fiduciary duty. Admittedly, the relief sought in Count II would be

---

[12] Because McKesson has not raised the issue, the court does not address whether, under the alleged facts, restitution is an available equitable remedy under the circumstances of this case. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006).

[13] LINA ignores Paragraph 47 of the complaint when it argues that Count II is entirely about McKesson's alleged wrongdoing. (Doc. # 27, at 4.)

similar, although not identical, to the relief requested in Count I.  That is, Count I seeks reinstatement of Mr. Poole's benefits under the Plan, and Count II requests injunctive relief and reformation of the 2006 Policy to prevent LINA from reducing his benefits.  But the relevant question is "whether the allegations supporting the Section 502(a)(3) claim [a]re also sufficient to state a cause of action under Section 502(a)(1)(B), regardless of the relief sought."  *See Jones*, 370 F.3d at 1073.  The allegations that LINA has breached a fiduciary duty are distinct from the allegations that LINA has failed to pay benefits owed to Mr. Poole.

For the reasons given above regarding McKesson's motion to dismiss Count II, Mr. Poole will be permitted to plead that he is entitled to equitable relief pursuant to § 1132(a)(3) from LINA if it is determined that he is not entitled to the relief he seeks under § 1132(a)(1)(B).  Consequently, LINA's untimely joinder motion to dismiss Count II, construed as a motion for judgment on the pleadings, is due to be denied.

### b.    Whether Count II Fails to Satisfy *Iqbal*

McKesson complains that Mr. Poole "has not provided sufficient facts to show that he was not 'made whole' by the Ford settlement," (Doc. # 12, at 7), so as to substantiate his claim that "[he] would have structured his settlement in a different manner and/or would not have settled the third-party lawsuit" had he known about the relevant Plan documents, (Doc. # 12, at 7 (citing Doc. # 1, at 12

¶ 46)).  LINA joins this argument without elaborating on it.  (Doc. # 18, at 1.)  Mr. Poole responds to McKesson's nearly identical argument in support of dismissal of Count I by contending "[t]here is no requirement that [he] plead every fact or legal conclusion related to the 'make-whole doctrine.'"  (Doc. # 20, at 6.)  He further posits that Defendants have been on notice that he was not made whole by the Ford settlement, but if the court finds his pleading to be inadequate, that he requests leave to amend it to state "the extent to which he was not made whole."  (Doc. # 20, at 4 n.6.)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces *does not require detailed factual allegations*, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 677–78 (quotations and citations omitted) (emphasis added).

Mr. Poole's complaint alleges that Defendants each owed fiduciary duties to Mr. Poole, that in failing to furnish him with Plan documents they breached their duties, and that he has been harmed because he entered a third-party settlement ill-advisedly.  (*See* Doc. # 1, at ¶¶ 6–7, 10–17, 42–49.)  The alleged factual content supporting Count II "allows the court to draw the reasonable inference that the

defendant is liable for" the alleged breaches of fiduciary duties.  *Iqbal*, 556 U.S. at 678.  To the extent that Defendants' motions request dismissal or judgment on Count II on the grounds that it is insufficiently pleaded, the motions will be denied.

### 3.   *Count III – Claims for Statutory Penalties*

#### a.   **McKesson's Liability as Plan Administrator**

Lastly, McKesson argues that Mr. Poole's statutory penalty claim under 29 U.S.C. § 1132(c) should be dismissed for Mr. Poole's failure to properly request plan documents from McKesson.  According to McKesson, Mr. Poole's attorney corresponded with Shawn Cole, the attorney representing McKesson in Mr. Poole's action for workers compensation.  McKesson protests that Mr. Poole should not have contacted Ms. Cole but rather "McKesson Corporation, c/o Vice President, Compensation and Benefits."  (Doc. # 12, at 8.)  McKesson further argues that ERISA does not require it to furnish Mr. Poole with "a complete copy of his claim file, CIGNA's claims manual, and all documents, records and other information relevant to his claim for benefits." (Doc. # 12, at 10 (citing Doc. #1, at 15–16 ¶¶ 57, 59, 61).)

Mr. Poole counters that McKesson is the Plan Administrator, and "Ms. Cole was in fact an agent of McKesson." (Doc. # 20, at 14.)  Even if Ms. Cole was not McKesson's agent, Mr. Poole says that McKesson still received Mr. Poole's February 2011 request for Plan documents.  As for McKesson's second argument

that ERISA does not require plan administrators to furnish many of the documents Mr. Poole later requested, Mr. Poole says that there is no authoritative answer in the Eleventh Circuit explaining which documents must be furnished to a requesting beneficiary.

McKesson replies that under Alabama law, Ms. Cole had a limited capacity to act as agent for McKesson concerning only Mr. Poole's workers compensation case.  Further, McKesson asserts that the SPD furnished by Ms. Cole identifies McKesson Corporation's Vice President as the proper plan administrator, and thus, Mr. Poole was informed about the proper party charged with supplying requested plan documents.  (Doc. # 23, at 20–21 (citing *Hiney Printing v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001).)

> Section 1132(c)(1) of ERISA provides that
>
> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may[,] in the court's discretion[,] be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may[,] in its discretion[,] order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).[14]  The Eleventh Circuit recently held in an unpublished decision that "[a] plan administrator is either 'the person specifically so designated by the terms of the instrument under which the plan is operated, . . . or a company

---

[14] The daily penalty has increased from $100 to $110.  29 C.F.R. § 2575.502c-1.

acting as a plan administrator." *Lockhart v. Blue Cross Blue Shield of Tenn*., 503 F. App'x 926, 928 (11th Cir. 2013) (internal quotations and citations omitted).

29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary,[sic] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated*." (Emphasis added).  The SPD should inform participants of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* at § 1022(b).

The complaint alleges that Mr. Poole requested relevant plan documents from McKesson, which is undisputedly the plan administrator, in February 2011. (Doc. # 1, at 3–4 ¶ 12.)  To prove its defense that Mr. Poole failed to properly contact McKesson, McKesson asks the court to consider evidentiary correspondence not described or referenced in Mr. Poole's complaint, namely Mr. Poole's attorney's emails to Ms. Cole, and her emails with McKesson's employees, concerning which documents governed Mr. Poole's claim.  (*See* Doc. # 12-6.)  Consequently, McKesson's motion to dismiss Count III on the ground

that Ms. Cole was not the proper contact or agent for McKesson "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).[15]

McKesson explains that Ms. Cole was not acting as an agent for McKesson with regard to Mr. Poole's long term disability benefits claim. But in her emails, Ms. Cole does not indicate any reservation about the scope of her representation of McKesson. (*See* Doc. # 12-6.) The emails show that she responded to the requests by communicating with McKesson employees about the documents governing Mr. Poole's claim. Thus, at a minimum, a dispute of material fact exists as to whether it was proper for Mr. Poole to request documents from Ms. Cole and whether it was proper for Mr. Poole to rely on her representations to him when she furnished the 2004 SPD to Mr. Poole. Consequently, even if the court considered this issue under Rule 56's standard, McKesson's motion for summary judgment on this ground would fail.

But as for McKesson's argument that it had no obligation to furnish copies of Mr. Poole's claim file, Cigna's claim manual, and all other records and information relevant to Mr. Poole's claim for benefits, McKesson's motion to dismiss is well-taken. ERISA requires plan administrators to furnish, upon

---

[15] *But cf. Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the [c]ourt may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

request, copies of the SPD and "other instruments *under which the plan is established or operated*."   29 U.S.C. § 1024(b)(4) (emphasis added).   But this requirement does not extend to "other instruments" in general.   *See Fox v. Blue Cross and Blue Shield of Fla., Inc.*, 517 F. App'x 754 , 757 (11th Cir. 2013) (affirming dismissal of similar § 1132(c) claim).[16]   Mr. Poole's demands for documents other than the governing policy and SPD were not requests for instruments under which the Plan was "established or operated."   *See* 29 U.S.C. § 1024(b)(4).

Hence, Mr. Poole's 29 U.S.C. § 1132(c) claim against McKesson survives as it pertains to Mr. Poole's written request(s) for copies of the policy and SPD governing his long term disability benefit rights, but Mr. Poole's § 1132(c) claim is due to be dismissed insofar as Mr. Poole alleges that McKesson violated ERISA by failing to provide other documents or to use its position of authority to compel Cigna to produce other documents.  (Doc. # 1, at 15–16 ¶¶ 54, 59, 61.)[17]

---

[16] Although it seems plausible to the court that an insurer's claims manual is an instrument under which a plan is operated, the *Fox* panel apparently would have rejected that argument.  *See Fox*, 517 F. App'x at 757 (citing *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009) ("Nothing in [ERISA] requires plan administrators to disclose claims manuals to plan participants.")).

[17] Additionally, Mr. Poole's complaint avers that the Secretary of Labor has promulgated regulations requiring plan administrators to furnish certain documents to plan participants upon request.   (Doc. # 1, at 15 ¶ 53 (citing 29 C.F.R. § 2560.503–1).)   29 C.F.R. § 2560.503–1(h)(2)(iii) requires that every employee benefit plan must provide a "[f]ull and fair review" by, among other things, "provid[ing], upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.")   Mr. Poole does not argue in his responsive briefing that Defendants' failure to

24

### b.   LINA's Liability as Claims Administrator or *"De Facto"* Plan Administrator

LINA adopts McKesson's arguments and adds that it was not a plan administrator, and therefore, it cannot be held liable under § 1132(c). (Doc. # 18, at 8 (citing *Adair v. Johnston*, 221 F.R.D. 573, 580 (M.D. Ala. 2004) (Thompson, J.) ("[O]nly plan administrators can be sued for violations of ERISA's notice and reporting requirements."); (Doc. # 27, at 9 (citing *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270–71 (11th Cir. 2008) ("[Defendant insurance company] was not subject to [§ 1132(c)(1)] document withholding penalties, as the statute *only* permits an award of penalties against *the plan administrator*.") (emphasis added)).)

Mr. Poole responds that LINA acted as a *de facto* plan administrator by taking on administrative duties and responding to requests for relevant documents. (*See* Doc. # 25, at 7–10 (citing *Rosen v. TRW, Inc.*, 979 F.2d 191, 193–94 (11th Cir. 1992) (holding that "if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document")).[18] He asserts that the governing Plan documents, referenced in his

---

comply with the Secretary's regulations constitutes an ERISA violation under § 1132(c). Even so, the court notes that "[w]ithout clear Eleventh Circuit precedent mandating the award of statutory penalties," other courts have been unwilling to exercise any discretion [they] might have to award statutory penalties for a violation of 29 C.F.R. § 2560.503-1(h)(2)(iii)." *Montgomery v. Metro. Life Ins. Co.*, 403 F. Supp. 2d 1261, 1266 (N.D. Ga. 2005).

[18] Mr. Poole's argument is consistent with his pleading. (*See* Doc. # 1, at 15 ¶ 55 (alleging Cigna has an obligation as an entity assuming the duties of "'any administrator,' the

complaint, give LINA the authority and discretion to determine benefit eligibility on claims and appeals. (*See* Doc. # 12-2). He points out that LINA made the same argument in another district court on another § 1132(c) claim at the motion to dismiss stage, and that the district court found that dismissal of the § 1132(c) claim was improper where LINA had allegedly acted as a claims fiduciary, made a decision on the plaintiff's claim, and notified the plaintiff of its decision. *See Cheal v. Life Ins. Co. of N. Am.*, 330 F. Supp. 2d 1347, 1356–57 (N.D. Ga. 2004). Consequently, Mr. Poole argues, "discovery is warranted to determine exactly what level of authority or control LINA exercised [over his] claim. Dismissing [Count III] against LINA would be premature at this point in the litigation." (Doc. # 25, at 10.)

LINA replies that Mr. Poole "essentially contends that LINA qualifies as *de facto* Plan Administrator because [LINA] served as Claims Administrator for the Plan." (Doc. # 27, at 9.) LINA further replies that Mr. Poole's allegations that LINA is a *de facto* plan administrator are conclusory and therefore subject to dismissal.

LINA is, according to the complaint, a claims administrator with fiduciary obligations. (Doc. # 1, at 2 ¶ 7, 15 ¶ 55.) But claims administrators are distinct from plan administrators, and only plan administrators are subject to the ERISA

claim administrator, the appointed claims fiduciary, or the *de facto* plan administrator, to comply with Mr. Poole's requests for information").)

penalties set out in 29 U.S.C. § 1132(c).  "Liability under § 1132(c) cannot . . . be imposed on a claims administrator such as [LINA], given the express language of [ERISA.]"  *Kennedy v. Metro. Life Ins. Co.*, 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005); *see also Byars*, 517 F.3d at 1270–71; *Adair*, 221 F.R.D. at 580–81.  Further, the Eleventh Circuit authority upon which Mr. Poole relies, *Rosen*, is distinguishable.  In *Rosen*, the designated plan administrator "was an inactive entity," and the defendant seeking dismissal was acting as plan administrator.  979 F.2d at 195.  Here however, McKesson is undisputedly the designated and acting plan administrator.  (Doc. # 1, at 15 ¶ 54.)  Accordingly, LINA's motion to dismiss Mr. Poole's § 1132(c) statutory penalty claim against it, which the court construes as a motion for judgment on the pleadings, is due to be granted.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' motions (Docs. # 12, 18) are GRANTED IN PART and DENIED IN PART as follows:

(1) To the extent that Mr. Poole has alleged in Count III that McKesson is subject to statutory penalties under 29 U.S.C. § 1132(c) for McKesson's failure to furnish documents other than the governing policy and SPD, these claims fail as a matter of law and McKesson's motion to dismiss is granted.  In all other respects, McKesson's motion to dismiss is denied, and Counts II and III survive against McKesson.

(2) Because LINA is not the plan administrator subject to statutory penalties under 29 U.S.C. § 1132(c), LINA's motion to dismiss Count III, which the court construes as a motion for judgment on the pleadings, is granted.  In all other respects, LINA's motion for judgment on the pleadings is denied, and Counts I and II survive against LINA.

DONE this 25th day of October, 2013.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE